IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OSEGHAE IGUADE, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FIRST HOME MORTGAGE ) <br> CORPORATION, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 23-cv-01067-LKG <br><br> Dated:  March 26, 2024 |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

In this civil action, Plaintiffs, Oseghae Iguade and Maurice Iguade, allege that Defendant, First Home Mortgage Corporation ("First Home"), discriminated against them upon the basis of race when First Home denied their mortgage loan application to purchase a home in Maryland, in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.*, and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*. *See generally*, ECF No. 1.  First Home has moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 18, 18-1.  This motion is fully briefed.  ECF Nos. 18, 18-1, 19, 19-1, 20.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** First Home's motion to dismiss and (2) **DISMISSES** the complaint.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this civil action, Plaintiffs allege that First Home discriminated against them upon the basis of race when First Home denied their mortgage loan application to purchase a home in Maryland, in violation of ECOA and the FHA. *See generally* ECF No. 1. Plaintiffs assert the following four claims against First Home in the complaint: (1) Violation of the Equal Credit Opportunity Act – Race Discrimination (Count I); (2) Violation of the Equal Credit Opportunity Act – Source of Income Discrimination (Count II);[2] (3) Disparate Impact (Count III); and (3) Violation of the Fair Housing Act (Count IV). *Id*. ¶¶ 46-58, 66-77. As relief, Plaintiffs seek to recover monetary damages, costs, and attorney's fees from First Home. *Id*. ¶ 77.

The Parties

Plaintiff, Oseghae Iguade, is a Maryland resident who resides in Prince George's County, Maryland. *Id*. ¶ 1. Plaintiff, Maurice Iguade, is a Maryland resident who resides in Baltimore, Maryland. *Id*. ¶ 2. Plaintiffs identify as Black. *Id*. ¶ 48.

Defendant First Home Mortgage Corporation is a Maryland corporation, with its principal place of business located in Baltimore, Maryland. *Id*. ¶ 3.

The Plaintiffs' Mortgage Application

In August 2021, Plaintiffs applied for a mortgage from First Home to purchase a property located at 4733 Wrenwood Avenue in Baltimore, Maryland (the "Property"). *Id*. ¶¶ 9-10, 22. The Property was owned by the U.S. Department of Housing and Urban Development ("HUD"). *Id*. ¶ 17. And so, Plaintiffs reached an agreement with HUD to purchase the Property for $95,000, pending their receipt of financing. *Id*. ¶ 19.

---

[1] The facts recited in this memorandum opinion are derived from the complaint; Defendant's motion to dismiss; the memorandum in support thereof; and Plaintiffs' response in opposition thereto. ECF Nos. 1, 18, 19, 20.

[2] Plaintiffs acknowledge that Count II should be dismissed, because ECOA only prohibits source of income discrimination that is based upon the borrower's receipt of income from public assistance programs. ECF No. 19-1 at 2. Plaintiffs do not allege that they received public assistance in this matter. *Id*.

Plaintiffs allege that, at the time they sought to purchase the Property, Plaintiff Oseghae Iguade was 29 years old, maintained gainful employment at a licensed group home, and had a credit score over 600. *Id*. ¶¶ 11-13. Plaintiffs also allege that they intended to use the separate basement living space at the Property as a means to secure rental income. *Id*. ¶ 43.

First Home conditionally approved Plaintiffs' mortgage application to purchase the Property. *Id*. ¶ 22. Before issuing final approval of Plaintiffs' mortgage application, First Home required a third-party appraisal of the Property. *Id*. ¶ 23.

On or about June 27, 2021, Residential Appraisal Service appraised the Property at $100,000, which was $5,000 above the purchase price paid by Plaintiffs. *Id*. ¶ 24. The appraisal also identified six issues that would need to be "completed" for the "dwelling [to] meet[] HUD's minimum property requirements for existing dwellings." *Id*. ¶ 25. The appraisal described the six action items as follows:

> 1) The utilities are to be turned on with the electric, gas and water working accordingly which includes the hot water.
>
> 2) The whole deck is chipping and peeling paint which is to be scrapped and painted which also includes the sides and the posts.
>
> 3) The rear kitchen door frame, to the deck, is chipping and peeling and is to be scraped and painted.
>
> 4) The front porch appears to have settled in front of the porch and is sloping downward. It is to be inspected by a licensed contractor and/or home inspector to insure the porch is structurally sound.
>
> 5) Dining room ceiling tile is to be put back in place as it is moved and there is an open hole in the ceiling.
>
> 6) Smoke detectors are to be working on each level or have new smoke detectors installed.

*Id*. ¶ 25.

Plaintiffs allege that, in July 2021, HUD turned on the utilities, smoke detectors, and water at the Property to facilitate an inspection of those items, as requested by the appraisal. *Id*. ¶ 29. Plaintiffs also allege that First Home never arranged to inspect the Property once HUD turned on those components. *Id*. ¶ 30. It is undisputed that Plaintiffs did not remedy the issues

related to the Property's back deck, rear kitchen doorframe, front porch, or dining room ceiling. *Id*. ¶ 27; ECF No. 18-1 at 3.

On October 7, 2021, First Home denied Plaintiffs' mortgage application, citing the third-party appraisal for the Property and stating that there was "inadequate collateral, the Property was unacceptable, and First Home was unable to determine whether structural issues existed" at the Property. ECF No. 1 ¶¶ 39-40. And so, Plaintiffs were unable to purchase the Property. *Id*. ¶¶ 41, 45.

### The Plaintiffs' Allegations

Plaintiffs allege in this action that First Home "continuously added extreme requirements" to their mortgage application process. ECF No. 19-1 at 1. In this regard, Plaintiffs claim that First Home repeatedly requested that Plaintiffs provide proof of their finances and supporting documentation, which Plaintiffs shared with First Home. ECF No. 1 ¶ 33.

In addition, Plaintiffs allege that First Home required Plaintiffs and two other family members to appear in person, be interrogated regarding their finances, and turn over their online banking login information, to allow First Home to review their bank accounts during the mortgage application process. *Id*. ¶ 34. Plaintiffs also assert that First Home raised credit objections that are unsupported by HUD guidelines, requesting that they make an additional $10,000 down payment towards closing costs with no guarantee of final approval. *Id*. ¶ 37.

Lastly, Plaintiffs allege that First Home's failure to approve their mortgage application forced Plaintiff Oseghae Iguade to find an alternative residence, which resulted in rental payments in excess of the prospective monthly mortgage payment on the Property. *Id*. ¶ 45. Given this, Plaintiffs contend that First Home's rejection of their mortgage application deprived them of the anticipated rental income from the basement apartment. *Id*. ¶ 43. And so, Plaintiffs seek to recover monetary damages, costs, and attorney's fees from First Home. *Id*. ¶ 77.

**B.      Procedural Background**

Plaintiff commenced this civil action on April 20, 2023. *See generally* ECF No. 1. On July 14, 2023, First Home filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 18, 18-1.

Plaintiff filed a response in opposition to First Home's motion on August 14, 2023.  ECF Nos. 19, 19-1.  First Home submitted a reply brief on August 28, 2023.  ECF No. 20.

First Home's motion to dismiss having been fully briefed, the Court resolves the pending motion.

### III.     LEGAL STANDARDS

#### A.  Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Rule 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambet v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

#### B.  Discrimination Claims Under ECOA And The FHA

The Equal Credit Opportunity Act prohibits creditors from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race [or] color." 15 U.S.C. § 1691(a)(1).  The Fair Housing Act makes it unlawful for any "entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race [or] color." 42 U.S.C. § 3605(a).

5

To state a plausible discrimination claim under either ECOA or the FHA, a plaintiff must sufficiently allege facts to show that the defendant "had a discriminatory intent or motive." *Tex. Dep't of Hous. & Cmty. Affs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015) (observing the pleading standard for plaintiffs in disparate treatment cases). And so, a plaintiff must allege facts to show that the defendant "undertook a course of action because of . . . the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 676-77 (cleaned up).

A plaintiff may prove discriminatory intent or motive by showing direct evidence of discrimination, or by using the *McDonnell Douglas* burden-shifting framework. *Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 576-77 (4th Cir. 2017). In this regard, the Court has held that direct evidence of discrimination "encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [housing] decision." *Letke v. Wells Fargo Home Mortg., Inc.*, 2013 WL 6207836, at *3 (D. Md. Nov. 27, 2013) (citation omitted). The Fourth Circuit has also held that direct evidence of discrimination is evidence that the defendant "'announced, or admitted, or otherwise unmistakably indicated that the [forbidden consideration] was a determining factor.'" *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (citation omitted).[3]

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so within the context of a discrimination claim brought pursuant to either ECOA and the FHA, a plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a loan; (3) a bank denied his application; and (4) other similarly situated applicants who were not in the protected class received loans or were treated more favorably. *See Wise v. Vilsack*, 496 F. App'x 283, 286 (4th Cir. 2012) (observing that "[m]ost courts that have considered ECOA discrimination claims have allowed plaintiffs to proceed under the burden-shifting framework laid out by the U.S. Supreme Court in *McDonnell Douglas*"); *Thompson v. Countrywide Home Loans Servicing, L.P.*, 2010 WL 1741398, at *4 (D.

---

[3] This Court has applied the *McDonnell Douglas* framework within the context of discrimination claims brought under the FHA. *See, e.g., Stemmons v. Corso*, 2022 WL 345041, at *6 (D. Md. Feb. 4, 2022) (citing *Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel Walker*, 719 F.3d 322, 325 (4th Cir. 2013); *Pinchback v. Armistead Homes*, 907 F.2d 1447, 1451 (4th Cir. 1990)).

Md. Apr. 27, 2010) (applying the *McDonnell Douglas* framework within the context of the FHA).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)) (holding the *McDonnell Douglas* framework applies to ADEA actions as well as those brought under Title VII). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Lastly, a plaintiff asserting a disparate impact claim pursuant to either ECOA or the FHA is required to demonstrate that a facially neutral practice has a "'disproportionately adverse effect on minorities and [is] otherwise unjustified by a legitimate rationale.'" *Reyes v. Waples Mob. Home Park Ltd. P'ship*, 903 F.3d 415, 419 (4th Cir. 2018) (quoting *Inclusive Cmtys.*, 576 U.S. at 524-25 (2015)). And so, the plaintiff must (1) identify a specific policy or practice employed by the defendant and (2) plausibly allege that it caused a significant disparate effect on a protected group. *Bailey v. PHH Mortg. Corp.*, 2021 WL 4478700, at *8 (D. Md. Sept. 30, 2021) (internal citations omitted). To do so, a plaintiff may allege facts or produce statistical evidence demonstrating a "robust" causal connection between the policy and the disparate impact. *Inclusive Cmtys.*, 576 U.S. at 542-43.

When determining whether a plaintiff has established a *prima facie* case for a disparate impact claim, the Court also considers whether members of a protected class were "disproportionately *affected*" by a challenged policy, rather than whether the defendant's actions were simply racially motivated. *Reyes*, 903 F.3d at 430 (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 385 (3d Cir. 2011)). In this regard, the United

7

States Supreme Court has explained that it is generally difficult for a plaintiff to demonstrate the required causal connection between the defendant's policy and evidence of a disparate impact when the plaintiff challenges a one-time decision by the defendant, rather than a broader policy. *Inclusive Cmtys.*, 576 U.S. at 543. *See Siguel v. King Farm Citizens Assembly, Inc.*, 2023 WL 6643348, at *19 (D. Md. Oct. 12, 2023) (holding the plaintiff's complaint failed to plausibly allege a disparate impact claim because the plaintiff merely asserted "conclusory allegations about how the [policy] negatively impacted *him*," and did not show "how the [policy] ha[d] a disproportionate impact on a *protected group*") (emphasis in original). If the plaintiff establishes a *prima facie* case for disparate impact claim, the burden shifts to the defendant to "state and explain the valid interest served by [its] polic[y]." *Inclusive Cmtys.*, 576 U.S. at 541.

### IV.    LEGAL ANALYSIS

First Home has moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following two grounds: (1) Plaintiffs fail to sufficiently allege facts to show intentional race-based discrimination in the complaint, to support their ECOA and FHA claims and (2) Plaintiffs fail to allege facts to show either racial disparities in First Home's mortgage loan denial rates, or that a neutral First Home policy had a disparate impact on Plaintiffs, as compared to applicants of a different race, to support their ECOA and FHA disparate impact claims. ECF No. 18-1 at 4-9. And so, First Home requests that the Court dismiss this matter. *Id.* at 11.

Plaintiffs counter that the Court should not dismiss this matter, because they "need only 'allege facts at least supporting an inference that discriminatory animus was a motivating factor'" in First Home's decision to deny their mortgage application at this stage in litigation. ECF No. 19-1 at 7 (quoting *Casa de Md., Inc. v. Arbor Realty Tr., Inc.*, 2002 WL 4080320, at *10 (D. Md. Nov. 27, 2013)). In this regard, Plaintiffs argue that they have pled sufficient facts in the complaint to show, through direct evidence, that First Home discriminated against them on the basis of race. *Id.* at 8-10. In addition, Plaintiffs argue that the complaint states a plausible disparate impact claim. *Id.* at 10-11. And so, Plaintiffs assert that they need not allege that a specific First Home policy causes a discriminatory impact. *Id.* at 11.

For the reasons that follow, a careful reading of the complaint shows that Plaintiffs fail to allege sufficient facts to show intentional race-based discrimination on the part of First Home, to state plausible discrimination claims under either ECOA or the FHA. The complaint also makes

8

clear that Plaintiffs fails to state a plausible disparate impact claim in this case, because the complaint is devoid of factual allegations to identify a neutral First Home policy that has had a significant disparate effect on a protected group.  And so, the Court: (1) GRANTS First Home's motion to dismiss and (2) DISMISSES the complaint.

### A.  Plaintiffs Fail To State Plausible Discrimination Claims

#### 1. Plaintiffs Fail To Allege Facts To Show Discriminatory Intent

As an initial matter, First Home persuasively argues that Plaintiffs fail to state plausible discrimination claims under ECOA and the FHA, because the complaint lacks facts to show intentional race-based discrimination.  To state a discrimination claim under ECOA and the FHA, Plaintiffs must sufficiently allege facts to show that First Home "had a discriminatory intent or motive" in denying their mortgage application.  *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.* 576 U.S. 519, 524 (2014).  Plaintiffs may prove such discriminatory intent or motive by showing direct evidence of discrimination or by using the *McDonnell Douglas* burden-shifting framework.  *Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 576-77 (4th Cir. 2017).   In the latter, to prevail on their discrimination claims, Plaintiffs must show that: (1) they are members of a protected class; (2) they applied for and were qualified for a loan; (3) a bank denied their application; and (4) other similarly situated applicants who were not in the protected class received loans or were treated more favorably.  *See Wise v. Vilsack*, 496 F. App'x 283, 286 (4th Cir. 2012) (observing that "[m]ost courts that have considered ECOA discrimination claims have allowed plaintiffs to proceed under the burden-shifting framework laid out by the U.S. Supreme Court in *McDonnell Douglas*"); *Thompson v. Countrywide Home Loans Servicing, L.P.*, 2010 WL 1741398, at *4 (D. Md. Apr. 27, 2010) (applying the *McDonnell Douglas* framework within the context of the FHA).

Relevant here, this Court has held that direct evidence of discrimination "encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [housing] decision."  *Letke v. Wells Fargo Home Mortg., Inc.*, 2013 WL 6207836, at *3 (D. Md. Nov. 27, 2013) (citation omitted).  And so, direct evidence of discrimination is evidence that the defendant "'announced, or admitted, or otherwise unmistakably indicated that the [forbidden consideration] was a determining factor.'"  *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (internal citation omitted).

The Court agrees with First Home that the complaint lacks sufficient facts to show intentional race-based discrimination in connection with Plaintiffs' mortgage application, based upon direct evidence. In the complaint, Plaintiffs allege that "First Home repeatedly requested that [they] provide proof of their finances including supporting documents" during the mortgage application process. ECF No. 1 ¶ 33. Plaintiffs also allege that they provided the requested information, but that their submissions "did not satisfy First Home." *Id*.

In addition, Plaintiffs allege that First Home "demanded" that they and other family members provide online banking login information as part of the mortgage application process. *Id*. ¶ 34. In this regard, Plaintiffs allege that First Home required Plaintiffs and two other family members to appear in person, be interrogated regarding their finances, and turn over their banking login information, to allow First Home to review their bank accounts during the mortgage application process. *Id*. Lastly, Plaintiffs allege that First Home "sought to condition [the] transaction on Plaintiffs securing a letter from the family members of the owner of [the Property] prior to HUD[,] attesting to said prior owner's date of death," despite no requirement to do so under HUD's guidelines. *Id*. ¶¶ 35-36.

Plaintiffs contend that the above-mentioned conduct demonstrates that they were "subjected to a higher degree of scrutiny than non-minority loan applicants." *Id*. ¶ 52. And so, Plaintiffs also contend that the denial of their mortgage application constitutes discrimination on the basis of their race, in violation of ECOA and the FHA. *Id*. ¶¶ 46-57.

Taken as true, Plaintiffs' factual allegations are not sufficient to show intentional race-based discrimination. It is undisputed that Plaintiffs are Black and, thus, members of a protected class. *Id*. ¶ 48. But there are no facts in the complaint to show that First Home's conduct during the mortgage application process, and its ultimate denial of Plaintiffs' mortgage application, was due to their race.

Indeed, as First Home correctly observes, the complaint does not allege that Plaintiffs' race was ever raised during the mortgage application process. *See generally*, ECF No. 1. Nor does the complaint allege that First Home announced, admitted, or unmistakably indicated that Plaintiffs' race was a determining factor in its decision to request certain information from Plaintiffs during the mortgage application process, or to deny Plaintiffs' mortgage loan. *Id*.; *see also, e.g.*, *Glenn*, 710 F. App'x at 577 (holding that plaintiff failed to allege direct evidence of

10

discrimination at the motion to dismiss stage even where a bank employee purportedly "reacted negatively upon learning his race"); *Martin v. Brondum*, 535 F. App'x 242, 244 (4th Cir. 2013) (holding that "facially-neutral statements" did not provide direct evidence of discrimination).

Plaintiffs also concede in their briefs that an independent, third-party appraisal found that the Property "would meet HUD's minimum property requirements for existing dwellings as outlined in the HUD Handbook 4000.1, once [six] items were completed." ECF No. 19 at 3-4. In this regard, Plaintiffs acknowledge that they failed to remedy four of the six concerns, involving the Property's back deck, rear kitchen doorframe, front porch, and an open hole in a ceiling. ECF No. 1 ¶ 27. Plaintiffs also similarly do not dispute that the HUD guidelines require that First Home may "only approve a Property after the [lender] confirms that all defects reported by the Appraiser have been corrected." ECF No. 19-1; *see also* HUD Single Family Housing Policy Handbook 4000.1 § II.A.3 at 181. Given this, the allegations in the complaint show that the noted deficiencies at the Property informed First Home's decision to deny Plaintiffs' mortgage loan.

The undisputed fact that First Home denied Plaintiffs' mortgage application several months after the June 27, 2021, appraisal is also not sufficient to establish a plausible inference of intentional race-based discrimination in this case. As First Home explains, the company afforded Plaintiffs ample opportunity to organize their finances and to correct the aforementioned deficiencies at the Property. ECF No. 20 at 4.

Plaintiffs also do not allege any facts to plausibly show that First Home's request that a title company obtain a letter from the family of the Property's deceased prior owner was because of their race. ECF No. 19-1 at 8; *see also* ECF No. 1 ¶ 32. Indeed, while Plaintiffs argue that this request is not a "common practice," they fail to explain how First Home's conduct in this regard relates to their race. ECF No. 19-1 at 8. Given this, the facts alleged in the complaint, taken as true, are simply not sufficient to show that First Home engaged in intentional race-based discrimination in connection with the consideration and denial of Plaintiffs' mortgage application.

B. **Plaintiffs Fail To Allege Facts To Establish A *Prima Facie* Discrimination Case**

First Home also persuasively argues that Plaintiffs cannot establish a *prima facie* case of discrimination under either ECOA or the FHA to prevail on their discrimination claims. As

11

discussed above, to state a discrimination claim under ECOA and the FHA, Plaintiffs must show that: (1) they are members of a protected class; (2) they applied for and were qualified for a loan; (3) a bank denied their application; and (4) other similarly situated applicants who were not in the protected class received loans or were treated more favorably.  *See Wise*, 496 F. App'x at 286 (observing that "[m]ost courts that have considered ECOA discrimination claims have allowed plaintiffs to proceed under the burden-shifting framework laid out by the U.S. Supreme Court in *McDonnell Douglas*"); *Thompson*, 2010 WL 1741398, at *4 (applying the *McDonnell Douglas* framework within the context of the FHA).  A careful reading of the complaint makes clear that Plaintiffs have not alleged sufficient facts to satisfy the second and fourth elements of their *prima facie* case.

First, Plaintiffs have not alleged facts to show that they were qualified for the mortgage loan at issue in this case.  Plaintiffs allege in the complaint that Plaintiff Oseghae Iguade was 29 years old, maintained gainful employment at a licensed group home, and had a credit score greater than 600, which exceeded the threshold where compensating factors need to be considered under FHA guidelines.  ECF No. 1 ¶¶ 11-14.  Plaintiffs also allege that Plaintiff Oseghae Iguade made a $1,000 earnest money deposit and received gifts of $5,000 and $8,000 from relatives, all of which went towards closing on the Property.  *Id*. ¶¶ 20-21.

But Plaintiffs acknowledge in the complaint that First Home denied their mortgage loan due, among other things, to the unacceptable condition of the Property and First Home's inability to determine if the Property had structural issues.  *Id*. ¶ 39.  Plaintiffs also concede in the complaint that they failed to remedy all of the structural concerns raised in the third-party appraisal for the Property.  *Id*. ¶ 27.  And so, the factual allegations, taken as true, do not show that Plaintiffs were qualified for the mortgage loan.

The factual allegations in the complaint are equally insufficient regarding the fourth element of Plaintiffs' *prima facie* case—that similarly situated non-minority applicants received loans or were treated more favorably than Plaintiffs.  There are no factual allegations in the complaint about similarly situated applicants outside of Plaintiffs' protected class.  *See generally*, ECF No. 1.  Given this, Plaintiffs the Court must DISMISS Plaintiffs' ECOA and FHA discrimination claims.  Fed. R. Civ. P. 12(b)(6); *see also Inclusive Cmtys*., 576 U.S. at 524.

### C. Plaintiffs Fail To State Disparate Impact Claims

As a final matter, First Home also persuasively argues that Plaintiffs fail to state plausible disparate impact claims under either ECOA or the FHA, because they do not identify a neutral First Home mortgage lending policy or practice that has had a disparate impact on a protected group. To state a disparate impact claim, Plaintiffs must demonstrate, among other things, that a facially neutral policy or practice has a "'disproportionately adverse impact on minorities and [is] otherwise unjustified by a legitimate rationale.'" *Reyes v. Waples Mob. Home Park Ltd. P'ship*, 903 F.3d 415, 419 (4th Cir. 2018) (quoting *Inclusive Cmtys.*, 576 U.S. at 524-25). A careful reading of the complaint shows, however, that Plaintiffs have not identified any neutral policy or practice of First Home to support their disparate impact claims in this case. *See generally*, ECF No. 1. While Plaintiffs may employ statistical evidence to prove their disparate impact claims, they are not relieved of the obligation to allege facts in the complaint that, taken as true, identify a neutral policy or practice related to First Home's mortgage application process that has a "'disproportionately adverse impact on minorities and [is] otherwise unjustified by a legitimate rationale.'" *Reyes*, 903 F.3d at 419; *see also, Siguel v. King Farm Citizens Assembly, Inc.*, 2023 WL 6643348, at *19 (D. Md. Oct. 12, 2023) (holding the plaintiff's complaint failed to plausibly allege a disparate impact claim because the plaintiff merely asserted "conclusory allegations about how the [policy] negatively impacted him," and did not show "how the [policy] ha[d] a disproportionate impact on a protected group") (emphasis in original). Because Plaintiffs have failed to do so here, the Court must also DISMISS their disparate impact claims. Fed. R. Civ. P. 12(b)(6).

### V. CONCLUSION

In sum, a careful reading of the complaint demonstrates that Plaintiffs fail to state plausible discrimination claims under ECOA and the FHA, because they do not allege sufficient facts to demonstrate intentional race-based discrimination on the part of First Home, or to show that they were qualified for a loan and that similarly-situated non-minority applicants received more favorable treatment. The complaint also makes clear that Plaintiffs fail to state plausible disparate impact claims in this case, because the complaint is devoid of factual allegations identifying a neutral policy or practice that has a significant disparate effect on a protected group.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** First Home's motion to dismiss; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

                                                  s/Lydia Kay Griggsby
                                                  LYDIA KAY GRIGGSBY
                                                  United States District Judge